IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TERRY L. SLAUGHTER,

Plaintiff, No. CIV S-03-0851 MCE DAD P

vs.

TOM L. CAREY, et al.,

Defendants. FINDINGS AND RECOMMENDATIONS

_________________________________/

Plaintiff is a state prisoner proceeding pro se with this civil rights action. Defendants' motion for summary judgment filed February 17, 2005, is before the court.

BACKGROUND

Plaintiff's claims concern conditions of confinement at CSP-Solano in 2001. The defendants are Warden Tom L. Carey, Correctional Lieutenant E. Sandy, and Correctional Sergeant J. Arthur. Plaintiff alleges that the defendants violated his Eighth Amendment right not to be exposed to environmental tobacco smoke when they forced him to share a cell with an inmate who smoked heavily for a sustained period of time.[1]

[1] Plaintiff previously alleged his claims in case No. CIV S-02-0051 FCD DAD P. The action was dismissed without prejudice due to plaintiff's failure to exhaust administrative remedies prior to bringing the action. The dismissal was affirmed on appeal.

At screening, the court determined that plaintiff's complaint appears to state cognizable claims for damages against the defendants. Plaintiff's claims for declaratory and injunctive relief were dismissed on May 30, 2003, due to the fact that plaintiff was no longer housed at CSP-Solano when he filed this action on April 25, 2003.[2]

Upon service of the complaint, defendants moved to dismiss the action pursuant to Rule 12(b)(6) for failure to state a claim. Defendants contended that plaintiff's allegations are vague and conclusory and fail to establish defendants' personal involvement in the alleged deprivation of rights. The motion to dismiss was denied on January 22, 2004.

Defendants filed an answer to plaintiff's complaint on February 11, 2004. The court issued a discovery order on February 18, 2004. The record reflects that plaintiff engaged in extensive discovery and filed multiple motions to compel. Plaintiff prevailed on one of those motions and on a motion for discovery sanctions.

On August 5, 2004, defendants sought leave to amend their answer to allege the affirmative defense of failure to exhaust available administrative remedies. Defendants were permitted to amend their answer and proceed with a second motion to dismiss. The motion to dismiss for failure to exhaust administrative remedies was denied on January 28, 2005.

Pursuant to the court's scheduling order filed July 6, 2004, discovery closed on December 17, 2004. The time for filing pretrial motions expired on February 25, 2005. On March 7, 2005, the court denied plaintiff's request to extend the pretrial motion deadline, plaintiff's untimely motion to compel defendants to respond to a request for admissions that was not served in a timely manner, and plaintiff's Rule 56(f) motion to deny or continue defendants' motion for summary judgment. The parties have filed pretrial statements and related motions. Pretrial conference is set for July 29, 2005, and jury trial is set for October 5, 2005.

/////

[2] Plaintiff was transferred back to CSP-Solano in November 2004, and he is confined there at the present time.

PLAINTIFF'S CLAIMS

By his complaint, plaintiff alleges that the defendants caused him to be subjected to environmental tobacco smoke for a sustained period of time, in violation of plaintiff's rights under the Eighth Amendment. Plaintiff alleges as follows: on October 4, 2001, after being celled for four and a half weeks with an inmate who smoked heavily, plaintiff contacted housing staff and requested an immediate cell change; plaintiff informed staff that he suffered from a sinus condition and that the constant smoking of his cellmate was exacerbating the condition, causing him to suffer headaches and insomnia; staff told plaintiff there was nothing they could do; plaintiff asked to speak to the lieutenant or the sergeant, and later contacted the sergeant; plaintiff explained the problem, but the sergeant ordered plaintiff to return to his cell; plaintiff asked to speak to the lieutenant, but the sergeant denied the request and ordered plaintiff again to return to his cell; plaintiff refused, citing health and safety reasons; plaintiff was placed in restraints and escorted to the program office, where he was ordered by defendant Sandy to return to his cell; plaintiff refused to comply for health and safety reasons; defendant Sandy issued an order placing plaintiff in administrative segregation; on October 10, 2001, plaintiff appeared before the institutional classification committee chaired by defendant Arthur; defendant Arthur reviewed defendant Sandy's order and decided that plaintiff should be retained in administrative segregation for an additional thirty days for refusing to comply with the orders of the facility sergeant and defendant Sandy; defendant Carey approved the retention order; on November 9, 2001, after 37 days in administrative segregation, plaintiff was released to the general population and was again assigned to a cell with an inmate who smoked in the cell; plaintiff refused to accept the assignment and asked to speak to the sergeant; plaintiff was again confronted by defendant Sandy, who threatened to return plaintiff to administrative segregation if he refused to accept the cell assignment, whereupon plaintiff complied with the order.

Exhibits to the complaint appear to indicate that plaintiff was housed with a smoker in November 2001 until he was issued a medical chrono for single-cell status. Plaintiff

pursued an inmate appeal that was granted in part by defendant Carey on February 4, 2002. The appeal concerned a rule violation report issued on October 4, 2001, charging plaintiff with refusing a direct order. Defendant Sandy had found plaintiff guilty of the charge, but at the less serious level of a custodial counseling chrono, at a hearing held on October 27, 2001. Defendant Carey granted plaintiff's request for dismissal of the rule violation report. The rule violation report and the custodial counseling chrono were removed from plaintiff's prison central file and destroyed on or about February 19, 2002.

STANDARDS FOR SUMMARY JUDGMENT PURSUANT TO RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Summary judgment should be entered, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. Summary judgment should be granted "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

/////

If the moving party meets its initial responsibility, the burden shifts to the opposing party to establish that a genuine issue as to any material fact does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of his pleadings but is required to tender evidence of specific facts in the form of affidavits and admissible discovery material in support of the contention that a dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The party must show that any fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

In trying to establish the existence of a factual dispute, the party opposing summary judgment need not establish a material issue of fact conclusively in his or her favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

The evidence of the party opposing summary judgment is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the party opposing summary judgment. Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587. An inference will not be drawn out of the air; it is the opposing party's obligation to establish a factual predicate from which an inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). The opposing party "must do more than simply show that there is some metaphysical doubt as to

the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On May 16, 2003, the court advised the pro se plaintiff of the requirements for opposing a motion brought by defendants pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

STANDARDS APPLICABLE TO PLAINTIFF'S CIVIL RIGHTS CLAIMS

The Civil Rights Act under which plaintiff is proceeding provides that

> [e]very person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires an actual connection or link between the actions of each defendant and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).

"A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and therefore, when a named defendant holds a supervisorial position, the causal link between the defendant and the claimed constitutional violation must be specifically alleged and proved. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).

The Eighth Amendment prohibits cruel and unusual punishments. U.S. Const. amend. VIII. It is well established that the unnecessary and wanton infliction of pain constitutes

cruel and unusual punishment forbidden by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). However, neither accident nor negligence constitutes cruel and unusual punishment, for "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319. In order to prevail on any claim of cruel and unusual punishment, a prisoner must prove facts that satisfy a two-part test. First, the prisoner must prove that objectively he suffered a sufficiently serious deprivation. Wilson v. Seiter, 501 U.S. 294, 298 (1991). Second, the prisoner must prove that subjectively each defendant acted with deliberate indifference in allowing or causing the prisoner's deprivation to occur. Id. at 299. It is insufficient to show mere negligence or error on the part of the defendant. Id.

An inmate's health and safety are conditions of confinement subject to the strictures of the Eighth Amendment. Wilson, 501 U.S. at 303. An injury to a prisoner's health or safety "translates into constitutional liability" for the prison officials responsible for a prisoner's safety when the deprivation suffered is sufficiently serious and each official had a sufficiently culpable state of mind in causing or allowing the deprivation to occur. Farmer, 511 U.S. at 834. Where a prisoner alleges failure to prevent harm, he or she satisfies the "sufficiently serious" requirement by proving the existence of conditions posing a substantial risk of serious harm. Id. at 834; see also Helling v. McKinney, 509 U.S. 25, 33-34 (1993). However, a prison official has a sufficiently culpable mind only where "the official knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. Whether a prison official had the requisite knowledge of a substantial risk is a question of fact. Id. at 842. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844.

THE RECORD BEFORE THE COURT

I. Defendants' Arguments and Evidence

Defendants assert that there is no evidence that plaintiff's deprivation was objectively sufficiently serious or that defendants acted with deliberate indifference. Defendants argue that plaintiff's claim is also barred by the doctrine of qualified immunity because the facts alleged do not establish a constitutional violation or show that the defendants acted with deliberate indifference.

Defendants offer a statement of undisputed facts supported by the declarations of the three defendants. Defendants' evidence establishes the following facts: during the evening of October 4, 2001, plaintiff, while outside his cell, complained to defendant Sandy, for the first time, that inmate Hilson smoked in their shared cell; prior to this complaint, defendant Sandy was unaware that plaintiff was housed with an inmate who smoked in their cell; inmates were not authorized to smoke in their cells or anywhere inside the buildings, and inmates who violated the no-smoking policy were disciplined; plaintiff and inmate Hilson were cellmates from September 16, 2001, to October 4, 2001; Sergeant Schwanke interviewed inmate Hilson on October 4, 2001, and inmate Hilson stated that he did not smoke in the cell; at approximately 9:00 p.m. on October 4, 2001, plaintiff refused to return to his cell; defendant Sandy told plaintiff he had to return to his cell because it was less than half an hour before institutional count; defendant Sandy told plaintiff to present his issues to program staff in the morning or bring them up when her next shift started at 2:00 p.m. the next day; plaintiff continued to refuse to comply with the order to return to his cell; plaintiff's refusal to comply with the order posed a threat to the safety and security of the institution; he was placed in administrative segregation; the institutional classification committee released plaintiff from administrative segregation to a single cell effective November 7, 2001; plaintiff was not housed with a smoker from October 4, 2001, when defendant Sandy was made aware of plaintiff's problem with inmate Hilson's in-cell smoking, to the time that plaintiff was transferred from CSP-Solano on May 3, 2002; defendants Arthur and

Carey were not aware that plaintiff was housed with a smoker who smoked in their shared cell until after plaintiff had been placed in administrative segregation and was no longer housed with a smoker; defendant Arthur first became aware of the problem when she reviewed plaintiff's placement in administrative segregation; defendant Arthur's only other involvement with plaintiff was as a member of the institutional classification committee; defendant Carey first became aware of plaintiff's problem with inmate Hilson's in-cell smoking when the defendant received correspondence from plaintiff's mother after plaintiff was placed in administrative segregation; defendant Carey's only other involvement with plaintiff was his second level response to plaintiff's inmate appeal.

Defendants acknowledge that housing a prisoner in an environment that exposes him to levels of environmental tobacco smoke (ETS) that pose an unreasonable risk of harm to the prisoner's health may constitute cruel and unusual punishment. Defendants argue, however, that the plaintiff in this case cannot show by scientific, statistical, or other objective evidence that he was exposed to unreasonably high levels of ETS during the 18 days he was housed with inmate Hilson or that any alleged injury to his health was caused by exposure during those 18 days. Defendants contend that there is no genuine issue for trial with regard to the objective element of plaintiff's Eighth Amendment claim and that defendants are entitled to summary judgment because the deprivation alleged by plaintiff is not, objectively, sufficiently serious.

Defendants argue further that they are entitled to summary judgment on the subjective element of plaintiff's claim because there is no evidence that the three defendants or any one of them knew that plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. Citing the fact that defendant Sandy first learned of plaintiff's concern less than half an hour before lock down for institutional count at the end of her shift, defendants contend that plaintiff's timing, the existence of the non-smoking policy, the inmates' conflicting stories about whether inmate Hilson smoked in their cell, and plaintiff's refusal to comply with a direct order dictated defendant Sandy's decision to place

plaintiff in administrative segregation, which removed plaintiff from exposure to ETS caused by inmate Hilson. Defendants contend that plaintiff was subsequently released from administrative segregation to a single cell and was never housed with a smoker after any of the defendants became aware of his problem with inmate Hilson. Defendants conclude that these facts demonstrate that there is no genuine issue for trial concerning the subjective element of the defendants' deliberate indifference and that they are entitled to summary judgment on this element as well as the objective element of plaintiff's claim.

II. Plaintiff's Arguments and Evidence

Plaintiff contends that there are genuine issues of material fact precluding summary judgment. With regard to the objective element of his claim, he asserts that defendants have conceded he was exposed to his cellmate's heavy smoking and the only matter in dispute is the level of his exposure. Plaintiff argues that he is unable to establish the level because defendants have not provided him with requested discovery and the court denied his request for appointment of an expert witness.

Plaintiff contends that he made numerous complaints to medical staff about his forced exposure to heavy smoking and that medical staff contacted the Chief Medical Officer and recommended that plaintiff be housed in a smoke-free cell. Plaintiff cites medical records showing he complained about secondhand smoke on September 27, 2001, and September 28, 2001. (Pl.'s Opp'n, Ex. E.) On the first of these dates, Dr. Levine noted significant sinusitis and congestion exacerbated by second hand smoke and advised plaintiff to see his internist for a decongestant. On September 28, 2001, a non-medical doctor recorded plaintiff's assertion of a "dire need of help" due to custody staff's failure to help him with his housing problem. These medical records do not reflect other complaints prior to October 4, 2001, and do not show that medical staff contacted the Chief Medical Officer or recommended a smoke-free cell prior to October 4, 2001. On October 9, 2001, after plaintiff was placed in administrative segregation and was no longer sharing a cell with inmate Hilson, Dr. Levine found plaintiff "appropriately

upset about real health concerns" and spoke to Dr. Horenstein, who stated that plaintiff "may send direct correspondence to Dr. Horenstein if smoking in cell persists." Plaintiff argues that the three defendants deliberately assigned him to cells with inmates known to be smokers and then forced him to remain housed with such an inmate after he complained and they had confirmed that the inmate was a smoker. Plaintiff cites no evidence in support of this argument and the court finds none in the record.

With regard to the subjective element of his claim, plaintiff asserts that unit housing officers knew he was housed with a smoker, he complained to the housing officers throughout September 2001 and repeatedly requested a cell change, and housing staff did not investigate or take any action to remove him from the potentially serious health risk. Although plaintiff disputes that defendant Sandy was first notified of plaintiff's exposure to in-cell smoking on October 4, 2001, he offers no evidence that creates a dispute of fact on this point. He argues, however, that even if she first learned of the problem on October 4, 2001, she was nevertheless deliberately indifferent to his health and safety because she did not investigate his complaint immediately, or instruct housing staff to investigate it immediately, and did not act immediately to remove him from the threat of harm. He views defendant Sandy as liable because she ordered him to return to his cell on October 4, 2001. He denies that the prison was on lock-down status[3] and asserts that defendant Sandy could have contacted the unit housing officers on duty and they would have confirmed that inmate Hilson was a heavy smoker. Plaintiff cites defendant Sandy's adjudication of his disciplinary on October 27, 2001, at which time she contacted the control booth officer and the officer did in fact confirm that inmate Hilson was a heavy smoker. (Pl.'s Opp'n, Ex. B.)

---

[3] Defendant Sandy declares that Sergeant Schwanke told plaintiff "it was time to lock up and . . . no moves were made at that time of night except emergency or moves to ad-seg" and she herself told plaintiff at approximately 9:00 p.m. "that because it was count time and the institution was on lockdown, he needed to return to his cell." (Decl. of E. Sandy ¶¶ 5 & 7.) The reference to lockdown appears to merely refer to the routine lockdown for count.

Plaintiff also disputes that defendant Arthur only became aware of plaintiff's exposure to his cellmate's heavy smoking on October 5, 2001, but again plaintiff offers no evidence that creates a dispute of fact on this point. Plaintiff argues that, as defendant Sandy's superior, defendant Arthur was obligated to investigate plaintiff's complaint immediately upon his placement in administrative segregation on October 4, 2001, or the next day when she reviewed that placement. Plaintiff complains that defendant Arthur did not initiate any investigation, did not contact housing staff, did not contact medical staff, and decided instead to retain plaintiff in administrative segregation for thirty additional days, during which time she took no action despite the recommendation of medical staff that he be housed in a smoke-free cell. Plaintiff also complains that, even though defendant Arthur ordered plaintiff released from administrative segregation on single-cell status, she failed to order unit housing staff to place him in a single cell immediately upon his arrival in the housing unit and as a result he was housed with an inmate known to be a smoker. Plaintiff provides an affidavit by inmate Jeffrey Evans, who declares that he was a heavy smoker in 2001 and he exposed plaintiff to environmental tobacco smoke by smoking daily in their cell until November 11, 2001. (Pl.'s Opp'n, Ex. C.)

Finally, plaintiff disputes that defendant Carey only became aware of plaintiff's problem on October 16, 2001, when he received a letter from plaintiff's mother. Plaintiff fails to offer any evidence that creates a dispute of fact on this point. He merely asserts that it must be presumed that the Chief Medical Officer notified Warden Carey of plaintiff's housing complaint on September 27, 2001. Plaintiff argues that all three defendants were obligated to review his medical file to determine appropriate housing, that all three defendants were obligated to take steps to ensure that he would never again be subjected to ETS after he was returned to the general population, that all three failed to meet their obligations, and that he was returned to the general population and housed with a smoker because of defendants' omissions.

In response to defendants' assertion of entitlement to qualified immunity, plaintiff argues that there is evidence of a constitutional violation and of defendants' deliberate

indifference. He contends that the right to be free from levels of ETS that pose an unreasonable risk of future harm was clearly established by the Supreme Court in Helling v. McKinney, 509 U.S. 25 (1993).

ANALYSIS

Upon consideration of defendants' arguments and the evidence offered in support of their motion for summary judgment, the undersigned finds that defendants have pointed to evidence demonstrating that there is no genuine issue as to any material fact concerning plaintiff's Eighth Amendment claims. Because the defendants have borne their initial responsibility, the burden shifts to plaintiff to establish the existence of genuine issues of material fact requiring a trial.

Although plaintiff argues that his complaint must be liberally construed, the argument is unavailing because plaintiff cannot rely on the allegations of his complaint in order to defeat a motion for summary judgment. At this stage of the litigation, plaintiff must provide evidence that supports his allegations or demonstrates the existence of genuine issues as to material facts. Because all three of the defendants are supervisory personnel, plaintiff must also offer evidence that provides a specific causal link between each defendant and the alleged constitutional violation. For purposes of plaintiff's Eighth Amendment failure-to-protect claim, plaintiff must demonstrate the existence of disputed facts concerning each defendant's knowledge of facts from which the inference could have been and was drawn that there was a substantial risk of serious harm to plaintiff's health.

Defendants have offered evidence that defendant Sandy was unaware prior to October 4, 2001, that plaintiff was housed with a heavy smoker who smoked in their shared cell despite the no-smoking policy. Plaintiff has not offered or cited any evidence that creates a dispute of fact concerning defendant Sandy's actual knowledge of facts from which she could have inferred a substantial risk of harm to plaintiff prior to October 4, 2001. It is undisputed that plaintiff complained to housing staff and medical staff, but such complaints do not demonstrate

that defendant Sandy personally knew about his complaints and his desire for a cell change, and she cannot be presumed to have known merely because of her supervisory position.

The court finds no merit in plaintiff's assertion that defendant Sandy violated his Eighth Amendment rights when she failed to provide him with a cell change on October 4, 2001. Although plaintiff alleges that no investigation was conducted on October 4, 2001, defendants' evidence shows that Sergeant Schwanke interviewed inmate Hilson on that date, and inmate Hilson denied smoking in the cell. Plaintiff's own evidence is in accord. When defendant Sandy conducted the hearing on the disciplinary charge on October 27, 2001, plaintiff himself stated that his cellmate "told Schwanke that he doesn't smoke, but he smokes a lot." (Pl.'s Opp'n, Ex. B.) Thus, the facts available to defendant Sandy on October 4, 2001, half an hour before institutional count and almost at the end of her shift, were contradictory. Plaintiff has not disputed defendants' evidence that cell changes are not made at night except in response to emergencies or for moves to administrative segregation. Nor has plaintiff disputed defendants' evidence that he was given an opportunity to return to his cell that night and pursue the issue with defendant Sandy or other staff the next day. Given the timing of plaintiff's demand for a cell change and inmate Hilson's denial that he smoked, defendant Sandy's decision to place plaintiff in administrative segregation for refusing a direct order was neither irrational nor calculated to cause plaintiff substantial harm.

Similarly, defendants have offered evidence that defendant Arthur was unaware prior to October 5, 2001, and defendant Carey was unaware prior to October 16, 2001, that plaintiff had been housed with a heavy smoker who smoked in their shared cell despite the no-smoking policy. Plaintiff had been placed in administrative segregation on October 4, 2001, and was no longer housed with a smoker when defendants Arthur and Carey learned of the problem. Plaintiff has not offered or cited any evidence that either defendant actually knew of plaintiff's problem prior to his placement in administrative segregation. Plaintiff has not demonstrated that there was a substantial risk of serious harm to his health on October 5, 2001, when defendant

Arthur reviewed his placement in administrative segregation for refusing a direct order, or on the date after October 16, 2001, when defendant Carey received a letter from plaintiff's mother concerning his placement in administrative segregation. Plaintiff has not demonstrated that either defendant should have inferred the existence of a substantial risk of serious harm to plaintiff after he was placed in administrative segregation. Both defendants subsequently acted in plaintiff's favor. Defendant Arthur was a member of the institutional classification committee that released plaintiff to general population on single cell status on November 7, 2001. Defendant Carey's name is on the second-level appeal response granting plaintiff's request for dismissal of the disciplinary conviction.

Finally, plaintiff has not pointed to any evidence that defendants were aware of the fact that he was housed with inmate Evans, another heavy smoker who violated the no-smoking policy, for approximately three days after he was released from administrative segregation to single cell status. Defendants' evidence indicates that all three of them believed plaintiff was released to a single cell and was never again housed with a smoker at CSP-Solano after October 4, 2001. Plaintiff has not demonstrated that his temporary assignment to inmate Evans' cell was made by one of the defendants, that any defendant was made aware of the assignment, or that the temporary assignment created a serious risk of substantial harm to his health.

Upon consideration of plaintiff's arguments and evidence, the undersigned finds that plaintiff has failed to demonstrate the existence of any issue of material fact concerning the subjective element of his Eighth Amendment claim. In the absence of any evidence that each defendant knew of and disregarded an excessive risk to plaintiff's health at any relevant time, the record, taken as a whole, could not lead a rational trier of fact to find that any defendant had a sufficiently culpable state of mind at the relevant time. Plaintiff has failed to come forth with evidence that creates a genuine issue of material fact on this critical element of his Eighth Amendment claim. Defendants are therefore entitled to summary judgment.

By separate order, the dates set for pretrial conference and jury trial will be vacated.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants' February 17, 2005 motion for summary judgment be granted; and

2. This action be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file and serve written objections with the court. A document containing objections should be entitled "Objections to Magistrate Judge's Findings and Recommendations." Any reply to objections should be filed and served within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 3, 2005.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:13
slau0851.57